IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SANDRA K. JOHNSTON, PH. D
and PAUL M. NIGL,

                                                     OPINION AND ORDER

            Plaintiffs,

                                                     18-cv-882-bbc

     v.

CATHY JESS, JON LITSCHER, EDWARD WALL,
MICHAEL MEISNER, STEVEN SCHUELER,
ANDREW WESNER, DAISY CHASE, GARY ANKARLO,
RANDALL HEPP, WISCONSIN DEPARTMENT OF
SAFETY AND PROFESSIONAL SERVICES DIVISION
OF LEGAL SERVICES AND COMPLIANCE,
MATTHEW WALLOCH, CODY WAGNER,
WISCONSIN PSYCHOLOGY EXAMINING BOARD
and DANIEL SCHROEDER,

            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiffs Sandra Johnston and Paul Nigl have filed a proposed civil action alleging that numerous state agency officials, entities and correctional staff violated plaintiffs' constitutional rights, federal employment law and state tort law in retaliation for plaintiffs' starting a relationship with one another. Because plaintiffs are proceeding in forma pauperis and Nigl is incarcerated, their complaint must be screened under 28 U.S.C. § 1915(e)(2) (relating to in forma pauperis proceedings) and § 1915A (relating to prisoner civil actions against government entities and officers). Also before the court is plaintiffs' objection to the November 28, 2018 order entered by Magistrate Judge Peter Oppeneer, denying plaintiff Nigl's request to use his release account funds to pay the entire balance of the filing fee for

1

this case. Dkt. #13.

For the reasons stated below, I cannot conduct the required screening because plaintiffs' complaint violates Rule 20 of the Federal Rules of Civil Procedure. Rule 20 prohibits litigants from joining in a single action as plaintiffs if they seek to bring unrelated claims against a different set of defendants. As explained in more detail below, plaintiffs must file separate lawsuits. Accordingly, plaintiffs must decide who will proceed as the plaintiff in Case No. 18-cv-882-bbc. Once plaintiffs have made their decision, I will then screen the relevant claims under the applicable standard. 28 U.S.C. § 1915(e)(2) or § 1915A. The other plaintiff and unrelated claims will be dismissed without prejudice, which means that the other plaintiff may bring his or her claims in a new, separate lawsuit subject to a separate filing fee. Plaintiffs' objection to this court's previous order, which I will construe as a motion for reconsideration, will be denied.

OPINION

A. Proposed Complaint

In their proposed complaint, plaintiffs allege that they met at the Waupun Correctional Institution, where Nigl was incarcerated and Johnston worked as a clinical psychologist. They began a relationship in early 2015, after Johnston took a different job at the Department of Health and Human Services and Nigl was transferred to the Red Granite Correctional Institution. Plaintiffs allege that they were subject to different acts of retaliation and discrimination after Johnston was rehired by the Department of Corrections

2

to work in the central office six months later. Specifically, Johnston was terminated from her position with the Department of Corrections in October 2015, and her license to practice psychology was suspended for one year in 2016. Around this time, she also filed a professional licensing complaint against her supervisor, defendant Gary Ankarlo, for sexual harassment. (Johnston does not allege whether she filed a complaint with the Equal Employment Opportunities Commission or the Equal Rights Division.) In November and December 2015, Nigl received two (allegedly) false conduct reports after he requested and was refused visitation with Johnston at the Red Granite Correctional Institution. (Nigle does not allege what the conduct reports were for or why he believes that they are false.) In June 2018, Nigl was transferred to the Fox Lake Correctional Institution, where he remains incarcerated.

Fed. R. Civ. P. 20(a)(1) provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Applying Rule 20 to plaintiffs' complaint, their allegations may be grouped into two possible, separate lawsuits consisting of the following claims:

**Lawsuit #1**: Plaintiff Nigl's First Amendment retaliation claims that defendants Daisy Chase and Andrew Wesner (correctional officers at the Red Granite Correctional Institution) filed false conduct reports against him, defendant Steven Schueler (security

director at Red Granite) approved the dispositions of the conduct reports and defendants Randall Hepp (warden of the Fox Lake Correctional Institution), Edward Wall (former secretary of the Department of Corrections) and Michael Meisner (warden of Red Granite) refused to correct the dispositions.

**Lawsuit #2**: Plaintiff Johnston's First Amendment retaliation, employment discrimination and state tort law claims that defendant Gary Ankarlo (psychological director at the Department of Corrections central office) refused to process her fraternization policy exception and sexually harassed her in the workplace, defendant Cathy Jess (former secretary of the Department of Corrections) placed her on administrative leave, defendant Meisner filed three (allegedly) false professional licensing complaints against her and defendants Wisconsin Psychology Examining Board, Daniel Schroeder (a board employee), the Department of Safety and Professional Services (DSPS) Division of Legal Services and Compliance, Cody Wagner (DSPS attorney) and Matthew Walloch (DSPS investigator) suspended her professional license for one year. (Plaintiffs do not make any specific allegations against remaining defendant Jon Litscher, the former secretary of the Department of Corrections.)

Although plaintiffs may believe that all of their claims are related because they involve various forms of retaliation stemming from their intimate relationship, a review of the complaint shows that there is no clear connection among the two lawsuits that would satisfy Rule 20. Even though the two lawsuits share some common facts, there are no important questions of law or fact common to plaintiffs' separate claims or all of the defendants.

4

Rather, the claims in each of the plaintiffs' possible lawsuits involve distinct incidents that occurred at different times and involved a different core set of defendants.

In addition, it is not enough that both plaintiffs have named the wardens of two institutions and several former secretaries of the Department of Corrections as defendants with respect to their respective retaliation claims. Plaintiffs' general allegations that these high-level officials retaliated against them do not support a conclusion that these defendants were personally involved in all of the transactions, occurrences or series of transactions relevant to both of the above-identified lawsuits. Supervisors may be liable under 42 U.S.C. § 1983 only if they are "personally responsible for the deprivation of the constitutional right." Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001) (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)). Further, even though plaintiffs allege that defendant Meisner had personal involvement in denying Nigl's appeal of his conduct report dispositions (lawsuit #1) and filing false licensing complaints against Johnston (lawsuit #2), those incidents are not sufficiently related to warrant joining the plaintiffs in one action.

In light of the procedural posture of this case, I conclude that plaintiffs may not proceed further with this action unless they decide which lawsuit will proceed in Case No. 18-cv-882-bbc. Once plaintiffs have made their decision, I will assign that lawsuit to this case number and apply to it the initial, partial payment that plaintiffs have already made. The second plaintiff and unrelated claims will be dismissed without prejudice. The dismissed plaintiff may choose to pursue his or her claims as well, but must do so in a separate lawsuit, paying a separate filing fee.

Because it is not clear at this time which lawsuit will go forward, plaintiffs should be aware that I have not reached any opinion about the merits of any claims raised in either of the lawsuits outlined above. Once plaintiffs have made their decision, I will screen the relevant claims as required by either 28 U.S.C. § 1915(e)(2) or § 1915A. If plaintiffs believe that the court has left out claims they intended to assert or that it has included claims they did not intend to assert, they may also raise those objections in their response, provided they still comply with this order and choose which of the two lawsuits they choose to pursue. If plaintiffs fail to do this, the court will have no choice but to dismiss all of the claims for plaintiffs' failure to prosecute the case.

B. Motion to Reconsider Use of Release Account Funds

Finally, plaintiffs have filed a motion objecting to the magistrate judge's decision not to allow plaintiff Nigl to use his release account funds to pay the entire filing fee for this case. Specifically, plaintiffs argue that the court erred in finding that "federal courts lack the authority to tell state officials whether and to what extent a prisoner should be able to withdraw money from a release account." Dkt. #10 at 1. In support of their argument, plaintiffs cite a decision by the United States District Court for the Eastern District of Wisconsin, holding that Nigl's age and mandatory release date meant that Nigl would never use his release account funds and qualified as good cause for allowing him to pay the remainder of his filing fee out of his release account. Nigl v. Litscher, case no. 17-cv-925, at *4 (E.D. Wis. Jul. 17, 2017) (citing good cause standard in Doty v. Doyle, 182 F. Supp.

2d 750, 752 (E.D. Wis. 2002)). However, that decision is not binding on this court and contradicts this court's long-standing policy with respect to release accounts. E.g., Artis v. Meisner, No. 12-cv-589, 2015 WL 5749785, at *5-6 (W.D. Wis. Sept. 30, 2015) ("Absent some authority requiring the prison to disburse [petitioner's] release account funds, the court declines to interfere in the administration of Wisconsin state prisons.").

The Eastern District of Wisconsin decision cited by plaintiffs is premised on Wisconsin statutes and regulations concerning the use of release account funds. E.g., Doty, 182 F. Supp. 2d at 751-52 (citing Spence v. Cook, 222 Wis. 2d 530, 587 N.W.2d 904 (Ct. App. 1998)). Although it is true that state courts in Wisconsin have allowed inmates to pay litigation fees and costs from release accounts, the statutory basis for those rulings is Wisconsin's Prison Litigation Reform Act. Spence, 222 Wis. 2d at 587. That state law is not applicable to federal cases, which are governed by the federal Prison Litigation Reform Act. Artis, 2015 WL 5749785, at *6 ("The court recognizes that Wisconsin has taken a more liberal approach in ordering the payment of litigation-related fees from release accounts, but that distinction is justified by the textual differences between the Wisconsin PLRA and the federal PLRA."). The federal Prison Litigation Reform Act provides that courts "shall . . . collect . . . an initial partial filing fee," and that prisoners "shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(1) and (2). The statute does not give federal courts authority to force the state to pay the remainder of his filing fee in a lump sum directly from his release account instead of from his regular account.

In addition, even if the state court holding in Spence were applicable in this case, federal courts do not have authority to enjoin state officials under state law. Smith v. Hepp, no. 17-cv-396-bbc, 2017 WL 4712229, at *2 (W.D. Wis. Oct. 18, 2017) ("It is up to prison officials to decide how to apply the release account regulations; this federal court generally cannot tell state officials how to apply state law.") (citing Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984)); Sherin v. Pugh, No. 11-cv-772, 2013 WL 4776462, at *2 (W.D. Wis. Sept. 5, 2013) ("While the Supremacy Clause of the United States Constitution requires state law to give way to a competing federal law in rare instances, there is no federal law that requires state officials to give prisoners money from their release account to pay the costs of prosecuting a civil lawsuit."). Accordingly, I will deny plaintiffs' motion for reconsideration. Nigl is free to try to persuade Department of Corrections officials to give him access to funds in his release account or to file a petition for a writ of certiorari in state court.


ORDER

IT IS ORDERED that

1. Plaintiffs Sandra Johnston and Paul Nigl may have until February 11, 2019 to identify for the court which of the numbered lawsuits identified above that one of them will pursue under the number assigned to this case. Plaintiffs must pick one and only one of these lawsuits to go forward under Case No. 18-cv-882-bbc.

2. Plaintiffs also may have until February 11, 2019, to advise the second plaintiff

wishes to pursue their lawsuit under a separate case number. If the second plaintiff chooses to go forward on the second lawsuit at this time, he or she should be prepared to make a partial payment of the filing fee. Any lawsuit not specifically identified to proceed will be deemed voluntarily withdrawn.

3. If plaintiffs fail to respond to this order in any way by February 11, 2019, the court will enter an order dismissing the lawsuit as it presently exists without prejudice for plaintiffs' failure to prosecute it.

4. Plaintiffs' motion for reconsideration of the court's November 28, 2018 order, dkt. #13, is DENIED.

Entered this 22d day of January, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge